CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 3 1 2020

JULIA C. DUDLEY, CLERK
BY: A. Beeson
DEPUTY CLERK

For Clerk's Office Use

| Judge | Rec'd |
|-------|-------|

IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTICT
OF VIRGINIA

For use by inmates filing a complaint under **CIVIL RIGHTS ACT, 42 U.S.C. §1983 or BIVENS v. SIX UNKNOWN NAMED AGENTS OF FED. BUREAU OF NARCOTICS, 403 U.S.C. §388 (1971)**

Eric Michael D'Aoust
Plaintiff full name

15204-049
Inmate No.

v.

CIVIL ACTION NO. 7:20CV522

Warden Breckon, Lieutenant Davis, Ofc. T. Brooks, Ofc. Bradbom,
Defendant(s) full name(s)

Ofc. Ball, Ofc. Ledford, Ofc. Gilbert, Ofc. Caudil (medical staff)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

A. Current facility and address: USP Hazelton

P.O. Box 2000 Bruceton Mills, WV 26525

B. Where did this action take place? USP Lee Jonesville, VA 24263

C. Have you begun an action in state or federal court dealing with the same facts involved in this complaint?

_____ Yes     __X__ No

If your answer to A is Yes, answer the following:

    1. Court: _____

    2. Case Number:_____

D. Have you filed any grievances regarding the facts of this complaint?

__X__ Yes     _____ No

    1. If your answer is Yes, indicate the result:

Administrative Remedy TORT claim - Denied
Tort Claim No. TRT-MXR-2020-05568

_____

    2. If your answer is No, indicate why:

E. Statement of Claim(s): State briefly the facts in this complaint. Describe what action(s) each defendant took in violation of your federal rights and include the relevant dates and places. **Do not give any legal arguments or cite any cases or statutes**. If necessary, you may attach additional page(s). Please write legibly.

Claim #1 – Supporting Facts – Briefly tell your story without citing cases or law:

Please see attached.

Claim #2 – Supporting Facts – Briefly tell your story without citing cases or law:

F. State what relief you seek from the Court. Make no legal arguments and cite no cases or statutes.

I'm seeking damages in monetary value totaling $100,000. Compensatory: $50,000
Punitive: $50,000

G. If this case goes to trial do you request a trial by jury?    Yes _X_    No ____

H. If I am released or transferred, I understand it is my responsibility to immediately notify the court <u>in writing</u> of any change of address after I have been released or transferred or my case may be dismissed.

DATED: 08-25-20    SIGNATURE: Eric M D'Aoust

VERIFICATION:
I, Eric Michael D'Aoust _____, state that I am the plaintiff in this action and I know the content of the above complaint; that it is true of my own knowledge, except as to those matters that are stated to be based on information and belief, and as to those matters, I believe them to be true. I further state that I believe the factual assertations are sufficient to support a claim of violation of constitutional rights. Further, I verify that I am aware of the provisions set forth in 28 U.S.C. §1915 that prohibit an inmate from filing a civil action or appeal, if the prisoner has, on three or more occasions, while incarcerated brought an action or appeal in federal court that is dismissed on the grounds that it was frivolous, malicious, or failed to state a claim upon which relief may be granted, unless the prisoner is imminent danger of serious physical injury. I understand that if this complaint is dismissed on any of the above grounds, I may be prohibited from filing any future actions without the pre-payment of the filing fees. I declare under penalty of perjury the foregoing to be true and correct.

DATED: 08-25-20    SIGNATURE: Eric M D'Aoust

1:8

Section E. Statement of Claim

I'm filing a lawsuit due to an incident that occurred on April 29, 2019 at 9:04 pm at USP Lee in Jonesville, Virginia. The basis of this claim is that on the above date and time my cell mate Nicholas James Jensen Register # 41024-013 appeared to be having a siezure at the 9:00pm count so the unit officers (Ofc. Ball/Ofc. Bradbury) hit their body alarm button and radioed in a medical emergency on Unit C but not a single person of medical staff responded. The officers that I can identify that responded to this medical emergency are; Lieutenant Davis, Officer T. Brooks, Officer Ledford, Officer Gilbert, Officer Bradburn, and Officer Ball. Here are the events that took place from that moment forward that the CCTV recording and hand-held video footage that was captured during "Use of Force" will show as well as the identity of the officers that I could not identify. My cell mate Nicholas James Jensen Register # 41024-013 was laid out on the floor so I attempted to cuff up through the tray slot to allow staff to assist inmate Jensen. The officers wouldn't allow me to cuff up, they wanted my cell mate to cuff up first and asked for my assistance in helping him do so. I tried several times to ask inmate Jensen to submit to the hand restraints but due to the siezure he had endured he was unresponsive. After officers

2 of 8

realized inmate Jensen was unable to cuff up they finally allowed me to do so. The officers hand-cuffed me extremely tight and pulled on the chain before unlocking my door, now my back is tight to the door and I cannot move. As they kept the tension on the chain, unlocked the cell door, and then pulled the door open it left me in an awkward position as if I was stuck to the door and uneasy on my feet. Upon getting the door fully opened the officers proceeded to body slam me extremely hard, so hard infact that my sandals went flying into the air. The officers scooped me off the floor and began strapping me into a roll-away suicide chair. As I was being strapped in I looked to my right where my cell door was still open and I noticed two officers assaulting inmate Jensen. One officer was hitting Jensen in the side of his head with his radio while the second officer was kicking his head with boots on. That is the only snapshot that I could see before the chair I was strapped into began rolling away but I am certain other inmates were viewing the incident just as they also observed me being body slammed in hand restraints. As officers rolled me down the back hallway designated for Unit Team they became

3:8

increasingly aggressive and rough with me. I was extremely confused at this point, I thought if I quickly submitted to hand restraints staff would be able to help my cell mate that suffered a seizure but now the officers were hurting me. The officers rolled the chair into an elevator at the end of this hallway and rehandcuffed me to a bar on the back of this suicide chair in an odd angle at which was very painful. When the elevator began to descend an officer pushed on the back of my head putting my face into my lap. The officer put all of his weight into this, so much as it raised his feet off the floor and injuring my neck. The elevator came to a stop and this roll-away chair started moving again. The officers smashed each of my shoulders on the door jambs of the elevator while one officer still pushed my head towards my lap straining my neck severely but now we were moving across the compound, the concrete walkways were familiar to me. At this point 4 or 5 officers were escorting me strapped in this chair which can also be confirmed via VICONNET CCTV that monitors the compound outdoors. As we were moving across the compound officers wheeled the chair I was in off the concrete walkway and into the loose gravel

4:8

which made the chair tip end over end while my hands were still cuffed to the back of it. The level of pain was so severe I almost passed out. The officers were all laughing and one of them said, "Where are we taking him?" Another replied by saying, "We'll take them both over to 41." As I was escorted indoors in excruciating pain I was wheeled down a hallway into a small room and surrounded by all of the officers listed in this claim except Ms. Ball. Most officers that work for the BOP have some type of military training and they began inflicting serious pain and assaulting me by using maneuvers that don't leave a lot of physical evidence such as shoulder locks, pressure points, and choke holds all while still pushing on the back of my head and straining my neck. At this current time I believed these officers were going to break my neck and kill me. In between periods of the officers inflicting these assaults on me I could hear my cell mate Nicholas James Jensen Register # 41024-013 down the hall screaming for mercy but I did not see him again that night. After a while medical staff officer Caudil came into the room I was in and I felt a sense of relief like the assault was almost over. The officers continued to inflict

5:8

pain for a little while longer using pressure points and stepping on the chain attached to my ankle cuffs. Suddenly Lieutenant Davis burst into the room and said, "Listen I'm going to turn on this hand-held video recorder so Caudil can do the medical assessment and if you say anything I'll fucking kill you." At this point I just did as I was told because I did believe these officers would kill me. Officer Caudil did a very brief medical exam for the camera and then these officers took me out of the chair and brought me to the SHU which wasn't a far walk from where ever "41" was. The Lieutenant kept the camera on me the entire time while in the intake area of the SHU until officers removed handcuffs and ankle cuffs. SHU officers did not put me into a regular SHU cell, I was in an observation cell that was adjacent to the intake area. At approximately 4:00AM a Lieutenant on 3rd shift came to the door and asked if I was ready to return to my cell on C Unit which I replied I was ready to do so. In the morning around 8:00AM on April 30, 2019 I awoke with bruising around both wrist and ankles, numbness in both hands and feet, and severe neck and back pain. I filed out a Medical sick call to submit to medical staff

6:8

so they could assess my symptoms but when the sick call staffer came on the unit it was officer Caudil from the previous night. I did not submit my request to medical in fear of retaliation by him or other officers that contributed to my assault. Around 9:00AM the unit C counselor Mr. Payne came to UDC me for an incident report for a code 307: Refusing a direct order. Mr. Payne held the disciplinary hearing right then at my door. Mr. Payne stated that he was aware what those officers did to Nicholas James Jensen and I the night before and that this was a "bogus" write-up so he was suspending all sanctions in regards to the report. This concludes the basis for the claim.

The facts that surround this claim are; ① I attempted multiple times informally to reach Warden Breckon and received no response from any administration, however Officer Caudil from medical did stop by my cell and told me to stop complaining to the Warden, his exact words were "stop crying to the Warden." The assault had me so unnerved that I sent out another letter using legal mail to my lawyer documenting this assault, I had to send the letter under

another inmate's name (Blake McDaniel 17024-084) because I felt that my attorney would not receive it if my name was on the return address meaning that staff would have intercepted the mail. (2) Due to the fact this is a policy or custom of Warden Breckon to allow his officers and staff to assault inmates without fear of reprimand is the reason I postponed taking any further action until I was in a safer environment because I was in fear for my life and retaliation and being "checkmated" by staff. Checkmating is a custom that correctional officers use to single out and harass inmates. (3) In a 1983 lawsuit against a municipality a court must analyze two distinct issues; (1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. To demonstrate municipal liability a plaintiff must (1) Identify the municipal liability or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to the execution of that policy. Because of the unconstitutional behavior of these officers and the Warden's policy I've sustained the following medical and psychological maladies; (1) Neuropathy in my hands and feet, excurciating neck and lower back pain. (2) PTSD, anxiety, and

paranoia. These are all injuries sustained from the assault on April 29, 2019. (3) I'm currently on Psychology's caseload and chronic care through medical where I'm prescribed medication for these listed injuries and symptoms. (4) My medical records will reflect the fact that these injuries and symptoms are due to the assault described in the foregoing complaint.

Thus because these allegations are so favorable to the complaintant and the injuries and psychological trama are potentially life long maladies I'm seeking a monetary value totaling $100,000 USD. Compensatory damages: $50,000 and Punitive damages: $50,000 equaling the $100,000 USD.

G DAust 15204-049
United States Penitentiary
Hazelton
PO Box 2000
Bruceton Mills, WV 26525

Legal Mail

United States District Court
Office of the Clerk
Western District of Virginia
210 Franklin Rd., SW, Suite 540
Roanoke, VA 24011

24011-000340